IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| THE CONSORTIUM FOR | ) | |
| INDEPENDENT JOURNALISM, INC. | ) | |
|     t/a Consortiumnews.com | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. __1:20-cv-1205__ |
| | ) | |
| | ) | **TRIAL BY JURY** |
| GLOBAL NEWS, a division of | ) | **IS DEMANDED** |
| Corus Entertainment, Inc. | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

# **COMPLAINT**

Plaintiff, The Consortium for Independent Journalism, Inc. t/a Consortium News ("Plaintiff"), by counsel, files the following Complaint against defendant, Global News, a division of Corus Entertainment, Inc. ("Global").

Plaintiff seeks (a) compensatory damages, three-fold damages and punitive damages in the sum of **$15,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from December 10, 2019 to the date of Judgment at the rate of six percent (6%) per year pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), (c) attorney's fees pursuant to § 18.2-500 of the Code, and (d) court costs – arising out of the Defendant's defamation and business conspiracy.

## I.  **INTRODUCTION**

1.      Founded in 1995 and headquartered in Arlington, Virginia, Plaintiff publishes "Consortium News", an Internet-based investigative news magazine.  Plaintiff publishes the work of independent journalists in Virginia and elsewhere in the United States and around the world.  Plaintiff has no ties with Russia.  In December 2019, Global – an international news and social media conglomerate that broadcasts, publishes and sells its content in more than 160 countries across the world – falsely accused Consortium News of being part of a cyber-influence campaign directed by Russia. Global's false, unfair and inaccurate statements held Plaintiff up to scorn, ridicule and contempt in the industry, and imputed to Plaintiff grossly unethical behavior, dishonesty, lack of integrity, conspiracy, and an unfitness to be a news reporter/publisher.

2.      Global published the following false and defamatory statements:

| No. | *Defamatory Statement* | *Published By* | *Published To* | *Date* |
|---|---|---|---|---|
| 1 | Plaintiff was part of an "online smear campaign" undertaken by "hostile foreign states", including "Russia", that "targeted … Chrystia Freeland, when she was foreign affairs minister" | Global | Online, globalnews.ca<br><br>Twitter | 12/10/2019 |
| 2 | "as for then foreign affairs minister Chrystia Freeland, in 2017 … the intelligence documents say while domestic sources reported on the facts, pro-Russia online media pushed the narrative to suggest that Freeland's family immigrated to Canada as part of a wave of Nazi collaborators" | Global | Global News Television<br><br>YouTube<br><br>Online, globalnews.ca<br><br>Twitter @globalnews @AbigailBimman | 12/10/2019 |

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|---------------------|--------------|--------------|------|
| 3 | Plaintiff is a "news agenc[y] linked to Russia … the news reports amplified and distorted facts making it appear that the whole family was connected to Nazi activity.  And so, how it works is this becomes a sort of rolling news narrative that is meant to damage, again, a Canadian leader" | Global | Global News Television<br><br>Online, globalnews.ca<br><br>Twitter | 12/10/2019 |
| 4 | "And it looks so real.  That's the thing.  A lot of people get fooled because it looks like a legitimate news source" | Global | Global News Television<br><br>Online, globalnews.ca<br><br>Twitter | 12/10/2019 |
| 5 | "The attacks on Freeland, who is now deputy prime minister, were partly meant to combat her support of laws targeting corrupt Russian oligarchs and leaders, the CSE records say, and included allegations that her Ukrainian grandfather had edited a newspaper with ties to Nazis" | Global | Online, Globalnews.ca<br><br>Twitter | 12/10/2019 |
| 6 | "The cyber-campaign directed by Russia involved distortions of facts and was timed, targeted … The first attack was a February 2017 report in the 'online Consortium News' followed 'in quick succession' by pro-Russian English language and Russian-language online media, the CSE report says" | Global | Online, Globalnews.ca<br><br>Twitter | 12/10/2019 |

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 7 | "A CSE report says Consortium News was part of an attack from Russia on Chrystia Freeland's reputation" | Global | Online, Globalnews.ca<br><br>Twitter @globalnews | 12/10/2019 |
| 8 | "'In early spring 2017 … sources linked to Russia popularized MFA Freeland's family history, very likely intended to cause personal reputational damage in order to discredit the Government of Canada's ongoing diplomatic and military support of Ukraine, to delegitimize Canada's decision to enact the Justice for Victims of Corrupt Foreign Offices Act, and the expulsion of several Russian diplomats'" | Global | Online, Globalnews.ca<br><br>Twitter @globalnews | 12/10/2019 |
| 9 | "The CSE records obtained by Global News appear to document for the first time direct allegations from Canada's government that Russia directed these cyber campaigns.<br><br>When asked in 2017 by Ottawa reporters to comment on the Russian reports, Freeland said: 'I don't think it's a secret [that] American officials have publicly said, and even [German Chancellor] Angela Merkel has publicly said, that there were efforts on the Russian side to destabilize Western democracies, and I think it shouldn't come as a surprise if these same efforts were used against Canada.'" | Global | Online, Globalnews.ca<br><br>Twitter @globalnews | 12/10/2019 |

(the "Defamatory Statements") [https://globalnews.ca/news/6258755/intelligence-reports-canadian-leaders-attacked-cyber-campaigns/;

https://globalnews.ca/video/6280887/secret-documents-reveal-russian-cyber-influence-targeted-high-profile-canadian-politicians;

https://globalnews.ca/video/6278341/canadian-leaders-attacked-in-cyber-campaigns-report/; https://www.youtube.com/watch?v=ofA3HPs7xlI].[1]

3.     Global published the Defamatory Statements in December 2019 at the time of a broad, international campaign by Deputy Prime Minister (and former Foreign Minister) Chrystia Freeland ("Freeland") and other powerful interests within the Canadian Government to link their critics to "Russia" as a way of discrediting those critics and protecting themselves.

4.     Each Defamatory Statement is of or concerning Plaintiff.[2]  The millions in Virginia and elsewhere who read the online Defamatory Statements and watched and heard the television broadcasts clearly understood them to be referring to Plaintiff and clearly understood them to convey a defamatory meaning, including that Plaintiff is

---

[1]     The Defamatory Statements were published and republished to millions, including viewers and subscribers to Global News and globalnews.ca.  Over 500,000 people follow Global on Twitter.  Over 2,000,000 people subscribe to Global's YouTube channel.

[2]     The December 10, 2019 video report by Global news reporter Abigail Bimman ("Bimman"), entitled **Secret documents reveal Russian cyber influence targeted high-profile Canadian politicians**" (the "Video"), defamed Plaintiff by falsely alleging that Plaintiff was part of a cyber-influence campaign directed by Russia and/or was a participant in a Russian government propaganda campaign. *See Defamatory Statement No. 2*.  At 00:25 of the Video, pictures of "Consortium News" are displayed prominently for approximately 10 seconds, accompanied by Bimman stating that "pro-Russia online media" pushed the false narrative to suggest that Freeland's family immigrated to Canada as part of a wave of Nazi collaborators.  The juxtaposition of CN's name and Bimman's statements falsely and incorrectly states or implies that Plaintiff published a false narrative as part of a cyber-influence campaign directed by Russia, and shows that Global intended or endorsed the defamatory meaning.

"linked" to Russia; that Russia "directed" Plaintiff's publication of an article about Freeland in February 2017 (see below); that Plaintiff "pushed" the false pro-Russia "narrative"; that Plaintiff participated in the cyber "attack from Russia" on the reputation of Canada's Minister of Foreign Affairs; that Plaintiff "distorted facts" and intended to "damage … a Canadian leader".   For instance, on January 21, 2020, freelance investigative journalist Justin Ling ("Ling") [https://justinling.ca/] concluded that "Consortium News … has had an involved role in peddling Russian propaganda". [https://twitter.com/Justin_Ling/status/1219734123817947137].   The Defamatory Statements caused substantial pecuniary loss, damaged Plaintiff's publishing business and good will, and gravely injured Plaintiff's reputation.

5.      In this case, Plaintiff seeks presumed damages, actual damages, special damages and punitive damages as a result of Global's statements and actions.   In addition, Plaintiff seeks a permanent injunction prohibiting Global from repeating the defamatory speech.

## II.  PARTIES

6.      Plaintiff is a Virginia corporation.   Its principal place of business and headquarters is in Arlington, Virginia.   Plaintiff is a private company in the news publishing business.   Plaintiff publishes a wide array of articles on U.S. domestic and international issues.   Plaintiff was founded in 1995 by the late Robert Parry ("Parry"), an investigative reporter for the Associated Press and Newsweek, who broke some of the biggest stories in the 1980s relating to Iran-Contra, including stories that identified Oliver North and his role in the scandal.   Parry won a George Polk Award for his work on the Iran-Contra affair.   In 2015, he was awarded the IF Stone Medal for Journalistic

Independence by *Harvard University*, and won the 2017 Martha Gellhorn Prize for Journalism.  Parry started Consortium News ("CN") after some of his most consequential stories were suppressed by his corporate news editors.  Parry's idea was to provide a publication for a consortium of investigative journalists whose work, often critical of the United States Government, was similarly suppressed by their editors.  Parry set up the Consortium for Independent Journalism, Inc. as a registered non-profit organization. Plaintiff does not receive or accept a penny from any government, corporation or advertiser.  It is totally funded by its readers.  Its editorial decisions are independent.  CN is created by a consortium of journalists, academics, freelance writers, former intelligence agency professionals, and an independent video producer.  Most have served at the highest levels of their professions.  CN's deputy editor is a former Wall Street Journal and Dow Jones Newswire editor.  Its columnists include a former Asia editor for The International Herald Tribune; a professor of Middle East politics at the University of California; and two former Central Intelligence Agency officials.  One delivered Oval Office briefings to President Ronald Reagan and President George H.W. Bush.  The other led the capture of al-Qaeda militant Abu Zubaydah.  CN's editor-in-chief, Joe Lauria ("Lauria"), is a veteran journalist with decades of experience in some of the most powerful media establishments.  He was a correspondent for The Wall Street Journal, The Boston Globe, and The Sunday Times (London) among others.  He won journalism awards from the Center for Public Integrity and the United Nations Correspondents Association.  Lauria lives in Alexandria, Virginia.  CN's Board of Directors include Pentagon Papers whistleblower Daniel Ellsberg, former CIA analyst Ray McGovern, famed journalist and filmmaker John Pilger, historian, author and investigative journalist

Gareth Porter, and former United States Senator Mike Gravel – a close, personal friend of the Canadian Prime Minister's late father, Pierre Elliott Trudeau.  CN's writers, editors, producers and Board Members have been on the forefront of investigative journalism for decades. [https://consortiumnews.com/about/].   Until it was tarnished by Global, CN enjoyed an excellent reputation.

7.      Defendant is a division of Corus Entertainment, Inc. ("Corus").  Corus is a media and content company that creates and delivers brands and content for audiences around the world.  Global is part of a national television network.  Global broadcasts news reports and operates an online, digital platform, www.globalnews.ca.   Global employs 200 journalists working in 13 newsrooms to provide content about issues in Canada, the United States, and abroad.  Global maintains a Washington, D.C. bureau and agents who live and work in Washington, D.C., including bureau chief Jackson Proskow. [https://twitter.com/jproskowglobal?lang=en].  Global routinely reports on and publishes articles about matters unique to Virginia. [*See, e.g.,*  https://globalnews.ca/tag/virginia/]. Indeed, Global advertises and represents that "GlobalNews.ca [is] your source for the latest news on Virginia."   One of Global's journalists who published false and defamatory statements about Plaintiff is Sam Cooper ("Cooper"). [https://globalnews.ca/author/sam-cooper/].   Cooper wrote the online article about Plaintiff at issue in this action and appeared on television to publish additional Defamatory Statements.

### III.  JURISDICTION AND VENUE

8.      The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Plaintiff is a

citizen of Virginia.  Defendant is, upon information and belief, a citizen of Canada.  The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.     Global is subject to personal jurisdiction in Virginia pursuant to Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3) and (A)(4), as well as the Due Process Clause of the United States Constitution.  Global targeted a Virginia citizen and engaged in a persistent, continuous and ongoing course of defamation that injured Plaintiff in Virginia.  Global has minimum contacts with Virginia such that the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.  The general thrust and content of Global's article, television broadcasts and tweets – which it wrote, produced, directed, spoke in, edited and published on multiple platforms that it operated – manifests an intent to target and focus on Plaintiff and direct content to a Virginia audience.  The focal point of Global's accusations was an article published in February 2017 in Virginia by Plaintiff and false accusations that Plaintiff – a Virginia corporation – is linked to Russia and knowingly published Russian propaganda to harm the reputation of Freeland.  The brunt of the harm, in terms of both of the injury to Plaintiffs' business and reputation, was suffered in Virginia, where Plaintiff is headquartered and publishes.  Plaintiff's claims directly arise from and relate to Global's publication of false and defamatory statements in Virginia. *Calder v. Jones*, 465 U.S. 783 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

10.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).  Global is subject to the Court's personal jurisdiction.  A substantial part of the events giving rise to

the claims stated in this action occurred in the Alexandria Division of the Eastern District of Virginia.

## COUNT I – <u>DEFAMATION *PER SE*</u>

11.    Plaintiff restates paragraphs 1 through 10 of this Complaint, and incorporates them herein by reference.

12.    On February 27, 2017, CN published an article in Virginia titled, "**A Nazi Skeleton in the Family Closet**". [https://consortiumnews.com/2017/02/27/a-nazi-skeleton-in-the-family-closet/].   The article revealed that Freeland lied about her grandfather's past as an editor of a Nazi newspaper in occupied Poland during the Second World War.  CN truthfully reported that Freeland concealed the dark family secret that her grandfather, Mykhailo Chomiak, faithfully served Nazi Germany right up to its surrender, and Chomiak's family only moved to Canada after the Third Reich was defeated by the Soviet Union's Red Army and its allies – the U.S. and Great Britain.  CN truthfully reported that Freeland's grandfather was not a victim of the war.  To the contrary, he was on the side of the German aggressors who collaborated with Ukrainian nationalists in killing Russians, Jews, Poles and other minorities.  A former journalist herself, Freeland chose to whitewash her family history to leave out her grandfather's service to Adolf Hitler.  Of course, if she had told the truth, Freeland might never have achieved a successful political career in Canada.  Her fierce hostility toward Russia – an enemy of the Third Reich – also might be viewed in a different light.  CN truthfully reported that Freeland's grandfather – rather than being a helpless victim – was given a prestigious job to spread Nazi propaganda, praising Hitler from a publishing house stolen from Jews and given to Ukrainians who shared the values of Nazism.  "While it is true

that the sins of a grandfather should not be visited on his descendants," CN reported that "Freeland should not have misled the public on history of such importance, especially when her deceptions also concealed how she partly developed her world view."

13.   A week after CN published its story, Canada's largest newspaper, the Globe and Mail (the "Globe"), ran a story titled, "**Freeland warns Canadians to beware of Russian disinformation**". [https://www.theglobeandmail.com/news/politics/freeland-warns-canadians-to-beware-of-russian-disinformation/article34227707/].   The Globe reported that: "[r]ecently a number of stories have appeared in pro-Putin regime websites, calling Ms. Freeland 'Canada's fiercely anti-Russian Foreign Affairs Minister' and alleging her grandfather, Michael Chomiak, was a Nazi propagandist in Poland." Freeland was asked that day at a press conference in Ottawa about the story.  She evaded the question about her grandfather and said, "I don't think it's a secret [that] American officials have publicly said, and even [German Chancellor] Angela Merkel has publicly said, that there were efforts on the Russian side to destabilize Western democracies, and I think it shouldn't come as a surprise if these same efforts were used against Canada." The very next day, under the headline, "**Freeland knew her grandfather was editor of Nazi newspaper**", the Globe and Mail reported that:

> "Foreign Affairs Minister Chrystia Freeland knew for more than two decades that her maternal Ukrainian grandfather was the chief editor of a Nazi newspaper in occupied Poland that vilified Jews during the Second World War … Ms. Freeland, … helped edit a scholarly article in the Journal of Ukrainian Studies in 1996 that revealed her grandfather, Michael Chomiak, was a Nazi propagandist for Krakivski Visti (Krakow News) … 'Dating back many years, the Minister has supported her uncle's efforts to study and publish on this difficult chapter in her late grandfather's past,' … [Freeland] did not directly respond to questions about whether the stories about Mr. Chomiak were true.  When The Globe asked her office on Monday to refute the allegation, [a representative of Freeland] responded: 'People should be questioning where this information comes from, and the motivations behind it.'"

[https://www.theglobeandmail.com/news/politics/freeland-knew-her-grandfather-was-editor-of-nazi-newspaper/article34236881/].

14.     On March 8, 2017, The Ottawa Citizen published an article with the headline "**Chrystia Freeland's granddad was indeed a Nazi collaborator – so much for Russian disinformation**".   The paper reported: "What are the sources for the information that Freeland's grandfather worked for the Nazis?  For starters, The Ukraine Archival Records held by the Province of Alberta.  It has a whole file on Chomiak, including his own details about his days editing the newspaper Krakivski Visti … 'In 1943 and 1944, both Lvivski Visti and Krakivski Visti hailed the German approved formation of the 14 Waffen SS Division Halychyna, composed of Ukrainian volunteers,' the [Holocaust] museum pointed out. So much for Russian disinformation."  [https://ottawacitizen.com/news/national/defence-watch/chrystia-freelands-granddad-was-indeed-a-nazi-collaborator-so-much-for-russian-disinformation].

15.     On March 9, 2017, Parry wrote that:

"On Feb, 27, Consortiumnews.com published an article describing misrepresentations by Canada's new Foreign Minister Chrystia Freeland about her Ukrainian maternal grandfather whom she has portrayed as a hero who struggled 'to return freedom and democracy to Ukraine' but left out that he was a Nazi propagandist whose newspaper justified the slaughter of Jews … Over the next week, the article entitled 'A Nazi Skeleton in the Family Closet' by journalist Arina Tsukanova (which I personally edited and fact-checked) circulated enough that Freeland was asked about it by the Canadian news media.  As often happens these days, Freeland chose not to tell the truth but rather portrayed the article as part of a Russian propaganda and disinformation campaign.  Yet, instead of fessing up and acknowledging these facts, Freeland chose to dissemble and slander journalists who were doing their job.  And the smears didn't entirely stop … This pattern has become all too common in the West, to insult and discredit anyone who doesn't accept the 'groupthinks' about the New Cold War.  Just as the major news media marched in lockstep over the Iraq-WMD falsehoods, so it has been toeing the line on the hysteria over supposed 'Russian propaganda' and 'fake news.'"

[https://consortiumnews.com/2017/03/09/another-russia-fake-news-red-herring/].

16.     Freeland harbored a grudge against Parry and CN as a result of CN's criticism of Freeland and her grandfather.  In 2019, ahead of the Canadian elections,  the Communications Security Establishment ("CSE") manufactured a narrative that linked Plaintiff to Russia.  CSE prepared a SECRET CEO ("Canadian Eyes Only") intelligence report that was given exclusively to Global in furtherance of the scheme to defame Plaintiff and deflect attention from Freeland's misconduct and her grandfather's sordid past.

17.     Global agreed to republish CSE's false statements as part of a collusive arrangement to undermine CN's credibility and integrity as a news publisher.  By December 2019, CN's article about Freeland and her grandfather was over three-years old.  It was not news, so there was another reason for publication of the Defamatory Statements.  Global confirmed that the "SECRET CEO" intelligence report[3] mentioned in its online article and television broadcasts was "prepared ahead" of the October 2019 Canadian federal election.   After winning re-election in her downtown Toronto constituency, Freeland was named deputy prime minister a month later.  A month after that, she was tabbed to head a powerful cabinet post, that in the words of one analyst

---

[3]     The CSE report was "CEO" ("Canadian Eyes Only"), meaning that it was not to be shared with Five Eyes ("FVEY"), the intelligence alliance comprised of the United States, United Kingdom, Australia, New Zealand and Canada.  Notwithstanding its classification, Global acquired the "SECRET CEO" intelligence report directly from CSE, Canada's version of the National Security Agency ("NSA").  The source, CSE, plus the timing of CSE's disclosure, plus the bizarre nature of the accusations – that a Virginia consortium of journalists would collude with Russian agents to spread disinformation – plus the prior reporting by Globe and Mail and Parry should have raised red flags and created serious doubts as to the truthfulness of the CSE report.  Instead of investigating further or at all, Global simply republished the Defamatory Statements about Plaintiff and added a few of its own for good measure.

quoted by iPOLITICS, means, "Chrystia Freeland is now functionally the prime minister."  In December 2019, CSE had a vested interest in squashing any further criticism of Freeland.  Global acted in concert with CSE to accomplish that common goal.

18.     Global did not contact Plaintiff for comment before it published the Defamatory Statements.

19.     Global made, published and republished numerous false factual statements of or concerning Plaintiff.  These statements are detailed verbatim above in paragraph 2.

20.     In an effort to spread the Defamatory Statements to the widest audience possible, Global, Cooper, Bimman and their agents republished the Defamatory Statements on Twitter, *e.g.*:

https://twitter.com/globalnews/status/1204406443291693056

https://twitter.com/scoopercooper/status/1204400579512061954

https://twitter.com/MercedesGlobal/status/1204451560283131904

https://twitter.com/TheWestBlock/status/1204406531053236224

https://twitter.com/AbigailBimman/status/1204743582021799936.

21.     Global published the Defamatory Statements without privilege of any kind.

22.     Global's false statements constitute defamation *per se*.  The statements accuse and impute to Plaintiff unfitness for an office of employment, deception, dishonesty, unethical behavior and lack of integrity, and cast aspersion on Plaintiff's honesty, integrity, prestige and standing in its field of business.  The false statements also prejudice Plaintiff in its trade and business as a news reporter/publisher.

23.     By publishing the false statements to third parties online, on television and via social media, including YouTube and Twitter, Global knew that the defamatory statements would be republished by third-parties to Plaintiff's detriment.  In addition to the original publications (identified above in paragraph 2), Global is liable for all republications of the false and defamatory statements by third-parties under the doctrine (the "republication rule") announced by the Supreme Court of Virginia in *Weaver v. Home Beneficial Co.*, 199 Va. 196, 200, 98 S.E.2d 687 (1957) ("where the words declared on are slanderous per se their repetition by others is the natural and probable result of the original slander.").

24.     Global's false statements caused substantial harm to Plaintiff's business and reputation.

25.     Global made the false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false.  Global acted with actual malice and reckless disregard for the truth for the following reasons:

a.     Based upon (i) Global's review of Plaintiff's website,[4] (ii) Global's knowledge of prior reporting about Freeland and her grandfather, including Global's review of the Globe articles and Parry's follow-up article, (iii) Global's actual knowledge that its sole source (CSE) had an established track record and reputation for spreading misinformation and propaganda, and, in this case, a motive for protecting Freeland, and (iv) the lack of *any* evidence that Plaintiff ever had any ties to Russia, Global knew that its statements were false or entertained serious doubts as to both the veracity, truth and

---

[4]     Prior to publication, Global reviewed Plaintiff's website (published in Virginia), read CN's prior reporting on Freeland and her grandfather, and took selective screenshot's that Global intended to use to fit the preconceived narrative that Plaintiff colluded with Russia in a cyber-influence campaign to smear Freeland.

accuracy of its statements.  Prior to publication of the Defamatory Statements, Global had no documents and no information confirming any "link" between Plaintiff and Russia or that the Russian Government "directed" Plaintiff to publish anything, and there were no such documents or information in any record.  Global blindly republished the "Russia" connection, which was fabricated out of whole cloth.  In the total absence of evidence, Global could not have had an honest belief in the truth of its statements about Plaintiff and the falsity of its statements may be inferred.  Global knew that Plaintiff was an independent news source with experienced, professional reporters and an experienced, professional editorial staff.  In spite of the known falsity of its statements and/or serious doubts as to veracity, and the probability that substantial harm would result to Plaintiff's business and reputation from publication of the Defamatory Statements, Global published demonstrably false statements as if they were true.  Global did not ask Plaintiff for a comment. *See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 682 (1989) (a clear evasion from the truth and the failure to interview an important witness, who was easily accessible, supports a finding of actual malice).

  b.    Global acted intentionally, purposefully and in concert with CSE to accomplish an unlawful purpose through unlawful means, without regard for Plaintiff's rights and interests.  Acting in concert with CSE, Global published the Defamatory Statements knowing they were false out of a desire to seek revenge and reprisal for CN's prior reporting about Freeland and her grandfather and to protect Freeland politically at all costs.

  c.    Global received the storyline from CSE and then consciously regurgitated the preconceived narrative that it knew to be false.  In its quest to paint

Plaintiff as a "Russian collaborator", Global abandoned journalistic integrity and ethics, misrepresented the content of CN's articles, and applied false labels to Plaintiff.

        d.     The words chosen by Global evince its ill-will, spite, heedless and palpable indifference to consequence, and desire to injure Plaintiff's business and reputation.

        e.     Global knowingly allowed an inaccurate report to damage an independent media organization, and reiterated, repeated and continued to republish the Defamatory Statements out of a desire to hurt Plaintiff and to permanently cripple Plaintiff's business.

26.    Global lacked reasonable grounds for any belief in the truth of its statements, and acted negligently in failing to determine the true facts.

27.    As a direct result of Global's defamation, Plaintiff suffered presumed damages and actual damages, including, but not limited to, loss and injury to business, injury to reputation, costs, and other out-of-pocket expenses, in the sum of $5,000,000.00 or such greater amount as is determined by the Jury.

## COUNT II – BUSINESS CONSPIRACY

28.    Plaintiff restates paragraphs 1 through 27 of this Complaint, and incorporates them herein by reference.

29.    Beginning in 2019 and continuing through December 10, 2019, Global combined, associated, agreed or acted in concert with CSE for the express purposes of defaming and injuring Plaintiff in its business and reputation.  In furtherance of the conspiracy and preconceived plan, CSE, acting with Freeland's apparent tacit approval, gave classified information and provided Global with the "SECRET CEO" intelligence

report.   Global agreed to republish the scandalous statements without investigation. Global and CSE engaged in a joint scheme the unlawful purpose of which was to defame Plaintiff and destroy Plaintiff's reputation, and the credibility, therefore, of the February 2017 article about Freeland and her grandfather.

30.     Global acted intentionally, purposefully, without lawful justification, and with the express knowledge that it was defaming Plaintiff.   In spite of the fact that Plaintiff produced irrefutable proof that Global's statements were false and in spite of Plaintiff's demand, Global refused to remove all mention of CN in its online article and apologize.[5]   As evidenced by its actions, Global acted and continues to act with the express and malicious intent to cause Plaintiff permanent injury.

31.     Global engaged in a business conspiracy against Plaintiff in violation of § 18.2-499 of the Code.

32.     As a direct result of Global's willful misconduct, Plaintiff suffered actual damages, including, but not limited to, loss and injury to business and good will, loss of credit and standing, injury to reputation, pecuniary loss and other special damages, costs,

---

[5]     On February 12, 2020, Global added the following "Editor's Note" to the article:

> "*Subsequent to the publication of this article, Consortium News advised Global News it disputes statements about it referred to in the CSE document that are reported on in the article.  Consortium News has told Global News it denies any implication it is 'an organ of or directed by the Russian government' and says it is an independent news source*".

The "Editor's Note" intentionally exacerbated the injury caused by publication of the Defamatory Statements because it was published weeks after Global's initial publication, and because it misrepresents and conceals the fact that it was published after Plaintiff issued Global a libel notice and demand to retract and apologize.

and other out-of-pocket expenses, in the sum of $5,000,000.00 or such greater amount as is determined by the Jury.

33.     In accordance with § 18.2-500 of the Code, Plaintiff seeks threefold the damages it sustained in the sum of $15,000,000.00.

## COUNT III – <u>INJUNCTION</u>

34.     Plaintiff restates paragraphs 1 through 33 of this Complaint, and incorporates them herein by reference.

35.     Global, acting in concert with CSE, disseminated false and defamatory statements that caused irreparable harm to Plaintiff.   Plaintiff is unable to repair its reputations with the persons that Global unilaterally contacted, especially the millions on Twitter whose identities are unknown.

36.     Monetary damages will not provide an adequate remedy for Plaintiff because, in the event Global continues to defame Plaintiff, Plaintiff would be required to bring a succession of lawsuits to deter Global and its co-conspirators from continuing to defame Plaintiff.   Monetary damages may not effectively deter "judgment proof" or wealthy defendants.

37.     In light of the balance of the hardships between Plaintiff and Global, a remedy in equity is warranted because Global remains able to express itself in a manner that does not repeat the statements that have been determined to be defamatory.

38.     Public interest would be served by an injunction narrowly tailored to prohibit repetition of the statements set forth in paragraph 2 that qualify as defamatory under Virginia law because such an injunction does not threaten to silence Global completely.

39.     Because Global has engaged in repeated acts of defamation *per se*, and the defamatory conduct at issue threatens to continue in the future, Global should be permanently restrained and enjoined from publishing the defamatory statements set forth in paragraph 2 to recipients within the United States by mail, email, or other social media. Further all hyperlinks to the Defamatory Statements should be deactivated.

Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in its possession.  Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of Global, CSE, Freeland and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves its right to amend this Complaint upon discovery of additional instances of Global's wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter Judgment against Global as follows:

A.     Compensatory damages in the amount of $5,000,000.00 or such greater amount as is determined by the Jury;

B.     Three-fold damages in the sum of $15,000,000.00 in accordance with § 18.2-500 of Code;

C.     Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

D.      Prejudgment interest from December 10, 2019 until the date Judgment is

entered at the maximum rate allowed by law;

E.      Postjudgment interest at the rate of six percent (6%) per annum until paid;

F.      Reasonable attorney's fees pursuant to § 18.2-500 of the Code;

G.      Such other relief as is just and proper.


**TRIAL BY JURY IS DEMANDED**


DATED:          October 13, 2020


                        THE CONSORTIUM FOR INDEPENDENT
                            JOURNALISM, INC.


                        By:___*/s/ Steven S. Biss*_____
                                Steven S. Biss (VSB # 32972)
                                300 West Main Street, Suite 102
                                Charlottesville, Virginia 22903
                                Telephone:     (804) 501-8272
                                Facsimile:     (202) 318-4098
                                Email:         **stevenbiss@earthlink.net**

                                *Counsel for the Plaintiff*