IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| THE CONSORTIUM FOR | ) | |
| INDEPENDENT JOURNALISM, INC., | ) | |
| *t/a Consortiumnews.com*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-01205 (AJT/TCB) |
| | ) | |
| GLOBAL NEWS, | ) | |
| *a Division of Corus Entertainment, Inc.*, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff The Consortium for Independent Journalism t/a Consortium News ("Plaintiff") has sued Defendant Global News, a Division of Corus Entertainment, Inc. ("Defendant" or "Global"), for defamation and business conspiracy for falsely accusing Plaintiff of being part of a cyber-influence campaign directed by Russia. In response to the Complaint, Defendant has filed a Motion to Dismiss for Lack of Personal Jurisdiction. [Doc. No. 9] (the "Motion"). Upon consideration of the Motion, the memoranda in support thereof and in opposition thereto, the argument of counsel at the hearing held on March 3, 2021, and for the reasons that follow, the Motion is GRANTED and the action is DISMISSED without prejudice for lack of personal jurisdiction.

### I. BACKGROUND

The Complaint [Doc. No. 1] ("Compl.") alleges the following:

Plaintiff, a Virginia corporation headquartered in Arlington, Virginia, founded in 1995, publishes "Consortium News," an internet-based investigative news magazine. *Id.* ¶¶ 1, 6.

Plaintiff's journalists are based in Virginia and elsewhere in the United States and around the world. *Id.* ¶ 1.

Defendant Global is a division of Corus Entertainment, Inc., "a media and content company that creates and delivers brands and content for audiences around the world." [1] *Id.* at ¶ 7. Global (a) is "part of a national television network;" (b) "broadcasts news reports and operates an online, digital platform, www.global news.ca;" (c) "employs 200 journalists working in 13 newsrooms to provide content about issues in Canada, the United States and abroad;"(d) "maintains a Washington, D.C. bureau and agents who live and work in Washington, including [its bureau chief];" (e) "routinely reports and publishes articles about matters unique to Virginia [*See, e.g.,* https://globalnews.ca/tag/virginia/];" (f) "advertises and represents that 'Global news [is] your source for the latest news and Virginia;'" and (g) the Global journalist who has "published false and defamatory statements about Plaintiff . . . wrote the article about Plaintiff at issue in this action and appeared on television to publish additional defamatory Statements." *Id.*

In February 2017, Consortium News published an article in Virginia titled, "A Nazi Skeleton in the Family Closet." *Id.* ¶ 12. The article reported that Chrystia Freeland ("Freeland"), then Canada's Foreign Affairs Minister, in an attempt to whitewash her family's ties to the Nazis and thereby further her political career in Canada, lied about her grandfather's

---

[1] Defendant has submitted in support of its Motion a Declaration that states that Global is not a division of Corus Entertainment, Inc., but rather a division of Corus Television Limited Partnership, a Canadian limited partnership, registered in Winnipeg, Manitoba and headquartered in Toronto, Canada, which, in turn, is "an indirect, wholly-owned subsidiary of Corus Entertainment Inc.," a Canadian corporation registered in Calgary, Alberta, and also headquartered in Toronto, Canada, and that "[e]ach of the intermediate corporate entities between Corus Television Limited Partnership and Corus Entertainment Inc. is also organized and registered under the laws of Canada with its headquarters in Canada." [Doc. No. 11] at ¶ 2. Any inconsistency between the Complaint's allegations and the Declaration concerning the ownership of Global does not appear to be a material factual dispute with respect to personal jurisdiction *vel non*. In any event, the Court accepts as true for the purposes of the Motion Plaintiff's allegation in the Complaint concerning Global's ownership.

past as an editor of a Nazi newspaper in occupied Poland during World War II and his support for the German aggressors who collaborated with Ukrainian nationalists in killing Russians, Jews, Poles, and other minorities. *Id.* In the following weeks, several other news outlets published similar stories. *Id.* ¶¶ 13, 14.

In 2019, ahead of the October 2019 Canadian elections, the Canadian Communications Security Establishment ("CSE") (akin to the United States' National Security Agency) prepared a Secret "Canadian Eyes Only" intelligence report that was given exclusively to Global in furtherance, according to Plaintiff, of a scheme to defame Plaintiff and deflect attention from Freeland's misconduct and her grandfather's past. *Id.* ¶ 16. The CSE report described efforts by Canada's adversaries to manipulate Canada's politics, including targeting Freeland with "cyber influence activity to cause [them] reputational damage," "in order to discredit the Government of Canada's ongoing diplomatic and military support of Ukraine, to delegitimize Canada's decision to enact the Justice for Victims of Corrupt Foreign Offices Act, and the expulsion of several Russian diplomats," and as an example of these efforts the report pointed to the February 2017 Consortium News article. [Doc. No. 10] ("MTD Mem.") at 4. Plaintiff alleges Global agreed to republish CSE's false statements to undermine Consortium News's credibility and integrity as a news publisher to support CSE's interest in squashing any further criticism of Freeland. Compl. ¶ 17. In October 2019, Freeland won re-election; a month later she was named Deputy Prime Minister and a month after that she was named Minister of Finance. *Id.*

In December 2019, Global published an article ("the Article") and two television broadcasts ("the Broadcasts") that Plaintiff claims falsely accused Consortium News of being part of a cyber-influence campaign directed by Russia. *Id.* ¶ 1. The Article was posted on the

Global News website on December 10, 2019, and concerned the "Canadian Eyes Only" report by the CSE, the Canadian intelligence agency, about foreign countries' attempts to influence Canadian politics and interfere with Canadian elections. *Id.* ¶¶ 1, 2, 16; *see also* Sam Cooper, *Canadian eyes only' intelligence reports say Canadian leaders attacked in cyber campaigns*, GLOBAL NEWS (Dec. 10, 2019), https://globalnews.ca/news/6258755/intelligence-reportscanadian-leaders-attacked-cyber-campaigns/. According to Plaintiff, these and similar statements were published on outlets that included Twitter, Global News Television, online at globalnews.ca, and YouTube. Compl. ¶ 2. In addition, the two Broadcasts, which pertained to what was reported in the Article, were aired and subsequently posted to the Global News website.

Based on these allegations, Plaintiff alleges that Global engaged in defamation (Count I) and business conspiracy (Count II).[2] As summarized by the Plaintiff, Global's accusations insinuated that Plaintiff was part of an "online smear campaign" undertaken by "hostile foreign states," including Russia that targeted Freeland in 2017 when she was Canada's Foreign Affairs Minister, Compl. ¶ 2; and Global published these and similar statements in December 2019 at the time of an international campaign by Freeland, then-Deputy Prime Minister of Canada, and others in the Canadian government to link their critics to Russia as a way of discrediting the critics and protecting themselves and their political agendas. *Id.*

Based on these allegations, Plaintiff also claims that Defendant is subject to personal jurisdiction over these claims pursuant to Virginia's long-arm statute, Va. Code, § 8.01-

---

[2] Plaintiff seeks (a) compensatory damages, three-fold damages, and punitive damages in the sum of $15,350,000.00; (b) prejudgment interest on the principal sum awarded by the jury from December 10, 2019 to the date of judgment at a rate of 6% per year pursuant to § 8.01-382 of the Virginia Code; (c) attorney's fees pursuant to § 18.2-500 of the Code; and (d) court costs.

328.1(A)(1), (A)(3) and (A)(4) and the Due Process Clause of the United States Constitution.[3]

In support of that claim, Plaintiff alleges the following:

> Global targeted a Virginia citizen and engaged in a persistent, continuous and ongoing course of defamation that injured Plaintiff in Virginia. Global has minimum contacts with Virginia such that the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice and is consistent with Due Process Clause of the United States Constitution. The general thrust and content of Global's article, television broadcasts and tweets – which it wrote, produced, directed, spoke in, edited and published on multiple platforms that it operated – manifests an intent to target and focus on Plaintiff and direct content to a Virginia audience. The focal point of Global's accusations was an article published in February 2017 in Virginia by Plaintiff and false accusations that Plaintiff – a Virginia corporation – is linked to Russia and knowingly published Russian propaganda to harm the reputation of Freeland. The brunt of the harm, in terms of both of the injury to plaintiffs'[sic] business and reputation, was suffered in Virginia, where plaintiff is headquartered and publishes. Plaintiff's claims directly arise from and relate to Global's publication of false and defamatory statements in Virginia. *Calder v. Jones*, 465 U.S. 783 (1984); *Keaton v. Hustler Magazine, Inc*., 465 U.S. 770 (1984).

*Id*. at ¶ 9.

In response to the Complaint, Defendant has moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and in support of that motion has submitted two declarations, together with the Article and a DVD with the two allegedly defamatory Broadcasts. *See generally* Defendant's Mot. to Dismiss for Lack of Personal Jurisdiction [Doc. No. 9]. As stated in the declarations[4] and as reflected in the Article and the two Broadcasts themselves:

---

[3] Those portions of the Virginia Code provide: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this Commonwealth; . . . (3) Causing tortious injury by an act or omission in this Commonwealth; . . . (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth. Va. Code, § 8.01-328.1(A)(1), (A)(3) and (A)(4).

[4] In response to the facts pertaining to Global's lack of activities or presence in Virginia, as stated in the Declaration submitted with its Motion, [Doc. No.11], Plaintiff claimed that it cannot challenge the accuracy of the facts affirmed in the Declaration without jurisdictional discovery, which it contends Defendant has refused. *See* [Doc. No. 25], n. 4. However, there is no evidence in this record that Plaintiff has ever requested jurisdictional discovery or claimed there was a good faith basis for disputing the Declaration's accuracy. In any event, following the filing of Plaintiff's opposition, Defendant provided a Reply Declaration [Doc. No. 29] concerning its lack of Virginia contacts, in effect,

5

1) The Article and Broadcasts focused on a Canadian government report prepared by the Communications Security Establishment  ("the CSE Report"), which had been obtained through the Canadian Access to Information Act, the Canadian equivalent of the U.S. Freedom of Information Act.  None refers to Virginia.

2) The Article, which consists of more than 1,400 words, briefly refers to Plaintiff in three places, without identifying it as a company located in Virginia: (a) in the statement "[t]he first [cyber-campaign directed by Russia] attack was a February 2017 report in the 'online Consortium News' . . . , the CSE report says;" (b) in a screen shot of the Consortium News February 2017 article; and (c) in the caption below the screenshot, where it says "[a] CSE report says the Consortium News was part of an attack from Russia on Chrystia Freeland's reputation."  [Doc. No. 11] (Declaration of Chris Bassett) (hereinafter "Bassett Decl."), Ex. A.

3) The first of the two Broadcasts did not mention Virginia or the Plaintiff at all; and the second also did not mention Virginia, and showed only an image of the Consortium News article for one second, along with other similar articles published around the same time in 2017 by other news outlets concerning Freeland's grandfather. *See* MTD Mem. at 6–7; *see also* Bassett Decl. ¶ 7 (referencing Exhibits B and C); *Canadian leaders attacked in cyber campaign: report*, GLOBAL NEWS (Dec. 10, 2019), https://globalnews.ca/video/6278341/canadian-leaders-attacked-in-cybercampaigns-

---

providing the kind of jurisdictional discovery Plaintiff suggested in its opposition it needed.  Since the filing of that Reply Declaration, Plaintiff has not presented or proffered any facts that dispute the information set forth in either the Declaration or the Reply Declaration; nor has it taken the position, either in its filings or at the hearing held on the Motion, that it needed additional jurisdictional discovery or that jurisdictional discovery might affect the Court's decision on the Motion.

report/ (last visited Mar. 30, 2021); *Secret documents reveal Russian cyber influence targeted high-profile Canadian politicians*, GLOBAL NEWS (Dec. 10, 2019) https://globalnews.ca/video/6280887/secret-documents-reveal-russian-cyberinfluence-targeted-high-profile-Canadian-politicians (last visited Mar. 30, 2021).

4) No Corus or Global employee visited Virginia in the course of preparing the Article or the Broadcasts and aside from unsuccessful attempts to contact Plaintiff for comment, including an attempt at sending an email, no Global employee had any communications with anyone in Virginia in the course of preparing any of the three publications.

5) While Global's website can be viewed anywhere in the world where a user has Internet access, Global broadcasts only in Canada, through the 15 Global brand broadcast stations and seven radio stations, as well as a Global-based cable television channel.

6) Global has no subscribers or viewers of its television or radio broadcasts in Virginia because its broadcast signals do not reach anywhere near Virginia and based on Global's "geo-location information," from December 10, 2019, the date on which the challenged publications were posted on the Global website, to the end of February 2020, the three publications at issue were viewed a total of 26,841 times, with only 114 of them (.0004 percent) by viewers located in Virginia, with an even smaller percentage of viewers from Virginia viewing the website generally relative to all world-wide viewers.  [Doc. No. 29] at 6(f).

7) Global has no offices, partners, or employees located in Virginia, no subscribers or viewers of its television or radio broadcasts in Virginia, and no meaningful relationship with any Virginia-based vendors, having contracted with only two Virginia vendors in

the last three years for, in one case, services related to equipment for its Canadian premises and, in the other case, one-time drawing services amounting to a cost of $500, and less than $500 in advertising revenue.  Basset Decl. ¶ 6.

8) With reference to Plaintiff's allegation that Global holds itself out as the source for "the latest news on Virginia," that language only appears in a thumbnail below the results of an Internet search for content that mentions Virginia. In that regard, Global's website can automatically generate pages collecting content about a specific place, person, or topic and in each case, the thumbnail statement "your source for the latest news" will appear with whatever subject is included in the search term.

## II. LEGAL STANDARD

A court may exercise personal jurisdiction over a nonresident defendant so long as the defendant has certain minimum contacts with the forum and the suit does not offend "traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  General jurisdiction exists whenever a foreign corporation engages in "continuous and systematic general business contacts" with the forum State, *Witt v. Reynolds Metals Co.*, 240 Va. 452, 454-455, 397 S.E.2d 873 (1990) (citing *International Shoe Company v. Washington*, 326 U.S. 310, 318 (1945), such that the corporation is "essentially at home in the forum State, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cited in *Daimler A.G. v. Bauman*, 571 U.S. 117, 127 (2014)).

Specific jurisdiction allows a state to exercise jurisdiction over a defendant with respect to a specific cause of action where the defendant's acts giving rise to that cause of action were

either committed in or directed to the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 472–73 (1985).  A court may therefore exercise specific personal jurisdiction where (1) the

defendants "purposefully availed [themselves] of the privilege of conducting activities" in

Virginia; (2) "the plaintiff's claim [arose] out of those activities directed at" Virginia; and (3)

"the exercise of personal jurisdiction would be constitutionally reasonable."  *Alexander v. Ave.*,

473 F. Supp. 3d 551, 557 (E.D. Va. 2020) (citing *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185,

189 (4th Cir. 2016)). Within the internet context, the Fourth Circuit has articulated "a sliding

scale test" to determine whether a "defendant purposefully availed itself of the privilege of

conducting activities in the State." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d

707, 712–13 (4th Cir. 2002).  Using that test, a court may exercise jurisdiction over an out-of-

state defendant when that entity "(1) directs electronic activity into the State, (2) with the

manifested intent of engaging in business or other interactions within the State, and (3) that the

activity creates, in a person within the State, a potential cause of action." *ALS Scan, Inc.*, 293

F.3d at 714. However, "'a person's act of placing information on the Internet' is not sufficient by

itself to 'subject[ ] that person to personal jurisdiction in each State in which the information is

accessed.' Otherwise, a 'person placing information on the Internet would be subject to personal

jurisdiction in every State,' and the traditional due process principles governing a

State's jurisdiction over persons outside of its borders would be subverted." *Young v. New Haven

Advocate*, 315 F.3d 256, 261, 263 (4th Cir. 2002) (quoting *ALS Scan*, 293 F.3d at 712).

Accordingly, in an Internet case, in order to show that a newspaper's website purposefully

directed activity in a substantial way to the forum state, "[t]he newspaper[] must, through the

Internet postings, manifest an intent to target and focus on Virginia readers."  *Id.* at 263.  That

9

intent to target and focus on the forum's readers must be shown by more than "simply post[ing] information on an Internet Web site which is accessible to users in foreign jurisdictions." *ALS Scan,*, 293 F.3d at 713–14 (contrasting a passive website to which defendant has simply posted information with one at the other "end of the spectrum . . . where a defendant clearly does business over the Internet by "knowing and repeated transmission of computer files over the Internet, [where] personal jurisdiction is proper").

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks personal jurisdiction. The plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is challenged by the defendant. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Jones v. Frazier*, No. 1:09-cv-513, 2009 WL 2601355, at *3 (E.D. Va. Aug. 18, 2009).

When the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff only needs to prove a *prima facie* case of personal jurisdiction. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). And in deciding whether plaintiff has proved a *prima facie* case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof and resolve all factual disputes in the plaintiff's favor. *Id.* However, the district court is not required to look solely at the plaintiff's allegations or proof, but may consider all documents submitted in connection with the motion, including "the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) ("[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers,

affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge.") (citing *Combs,* 886 F.2d at 676); *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979 (N.D. Cal. 2016) (citing *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)) (stating in deciding whether a *prima facie* showing has been made, the court accepts as true the uncontroverted allegations in the complaint and conflicts between facts contained in the parties' affidavits must be resolved in a plaintiff's favor). The court may also consider and accept as true "a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)(also explaining "the exhibit-prevails rule, which provides that in event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails") (alteration and internal quotation marks omitted).

### III. ANALYSIS

#### A.  General Jurisdiction

Plaintiff alleges that there is general personal jurisdiction over Global because Global engaged in a persistent, continuous, and ongoing course of defamation that injured Plaintiff in Virginia, such that the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause.  Compl. ¶ 9. But the only factual support offered for that conclusory allegation is that Global broadcasts content to viewers in Virginia and operates a digital platform that repeatedly publishes information into Virginia, its journalists routinely report on and publish articles about matters

11

unique to Virginia, and it advertises and represents that its website is "your source for the latest news on Virginia.," Opp. at 10–11; Plaintiff has proffered no evidence that calls into question Global's evidence that it has no assets, offices, or employees in Virginia. And for essentially the same reasons discussed with respect to specific personal jurisdiction, general jurisdiction cannot be reasonably be inferred from Defendant's placing on the internet content accessible by a Virginia audience or placing on its Virginia-specific web page articles about matters concerning Virginia. *See Young*, 315 F.3d at 261, 263; *ALS Scan*, 293 F.3d 70at 711 (finding the act of posting news articles on publication's website, which could be accessed anywhere including Virginia, did not alone demonstrate the publication was intentionally directing content to a Virginia audience and requiring "[s]omething more" than posting and accessibility to indicate publication purposefully directed activity to Virginia); *see also* Global News, Virginia, available at: https://globalnews.ca/tag/virginia (last visited Mar. 31, 2021).  In short, even when the relied upon activities are viewed most favorably to the Plaintiff, they do not allow the reasonable inference that Global has engaged in such continuous, systematic business activities in Virginia to make this Canadian company "essentially at home" in Virginia. *See Ratliff v. Cooper Lab'ys, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (finding no general jurisdiction where defendant employed forum state residents and advertised in national journals that found their way into the state, but defendant had no office, goods, bank accounts, or real or personal property in forum state). Plaintiff has failed to adequately allege a *prima facie* case for general personal jurisdiction.

## B.  Specific Jurisdiction

Plaintiff contends that there is specific personal jurisdiction because the general thrust and content of Global's articles, television broadcasts, and tweets manifests an intent to target Plaintiff and direct content to a Virginia audience. In *Young*, the Fourth Circuit applied the *ALS Scan* test to determine whether two Connecticut newspapers that had published on two websites articles discussing conditions in a Virginia prison, which allegedly defamed a Virginia prison warden, had manifested an intent to direct their website content to a Virginia audience such that they had subjected themselves to personal jurisdiction in Virginia. *Young*, 315 F.3d at 263. The Court reviewed the "general thrust and content" of the pages from the newspapers' websites and found that the overall content was "decidedly local" to Connecticut and neither newspaper's website contained advertisements aimed at a Virginia audience. *Id.* For example, one newspaper website provided access to local Connecticut weather and traffic information and links to state university and government websites; the other newspaper website featured stories focusing on New Haven; and both websites appeared to serve local readers in the state, rather than a Virginia audience. *Id.* In addition, the Court examined the specific articles the plaintiff complained about and determined they were not posted on the Internet with the intent to target a Virginia audience because, although the articles referred to the conditions at a Virginia prison, the focus of the articles was the Connecticut prisoner transfer policy and its impact on transferred prisoners and their Connecticut families and encouraging public debate in Connecticut about the policy and its implications for the state and its citizens. *Id.* at 263–64. The Court determined that Connecticut, not Virginia, was the focal point of the articles and the newspapers' websites were aimed at a Connecticut audience and, therefore, reversed the order of the district court denying the motions to dismiss for lack of personal jurisdiction. *Id.* at 264.

13

Here, considering the first two prongs of the inquiry together, *Young*, 315 F.3d at 263, Plaintiff has failed to adequately allege or proffer sufficient facts from which to reasonably infer that Global intended to target and focus on Virginia readers through the Article or the Broadcasts.  A review of Global's website reveals a predominantly Canadian focus overall.  For example, the banner at the top of the Global website links to pages such as "World," "Canada," and "Local" pages, and the "Local" page links only to Canadian cities.  Although Global is capable of directing electronic activity to Virginia through a webpage specifically directed to a Virginia audience, the Article was not posted and does not appear on the Virginia page,[5] and the five most recent articles on that Virginia-specific page are from March 27, 2021, January 8, 2021, November 25 and 23, 2020, September 14, 2020, and August 29, 2020, none of which pertain to the allegedly defamatory material, and it appears that the Virginia page is updated only sporadically and is not the focus of the website.  *See* Global News, Virginia, available at: https://globalnews.ca/tag/virginia (last visited Mar. 31, 2021).  Overall, it appears the Global website is designed to serve Canadian readers and is "not designed to attract or serve a Virginia audience."  *Young*, 315 F.3d at 263.

Concerning the allegedly defamatory publications themselves, it appears that like those in *Young*, they have as their "focal point," not Virginia, but Canada.  The focus of the article was the cyber campaigns and tactics used by Canadian and Western adversaries to influence state media.  Against this background, Global's publications did not "manifest an intent to target and

---

[5] At the March 3, 2021, hearing on the Motion, Global's counsel represented, consistent with the submitted Reply Declaration, that articles only appear on Defendant's Virginia webpage if they contain the word "Virginia," which the article in question did not.  This sort of passive posting of information has not been viewed as a sufficient basis to exercise personal jurisdiction. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713–14 ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.") (quoting *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997)).

14

focus on Virginia readers" such that Global could have "reasonably anticipated being haled into court in Virginia to answer for the truth of the statements made in their articles." *Young*, 315 F.3d at 263 (quotation omitted).  Accordingly, there are insufficient Internet contacts with Virginia to permit this Court to exercise specific jurisdiction over it.

Plaintiff argues that personal jurisdiction exists because it suffered the brunt of the harm in Virginia.  The Supreme Court rejected a similar argument in *Walden v. Fiore*, where the Supreme Court concluded:

> [M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.  The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

571 U.S. 277, 290 (2014).  For the reasons stated above, the fact that Plaintiff resides in Virginia and suffered injury here does not, without more, establish the "minimum contacts" for this Court to exercise personal jurisdiction where the article and broadcasts were created for a Canadian audience concerning matters of Canadian politics.  *Cf. Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (exercising personal jurisdiction in libel case where defendants made phone calls to sources from the forum state, wrote a newspaper article about plaintiff's activities in forum state, caused reputational harm in forum state by writing article that was widely circulated in the state, and the "brunt" of that injury was suffered by the plaintiff in that State).  Unlike in *Calder*, in this case, Virginia was not "the focal point both of the story and of the harm suffered." *Id.* at 789.

## IV. CONCLUSION

For the above reasons, it is hereby

15

ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Doc.

No. 9] be, and the same hereby is, GRANTED and this case be, and the same hereby is,

DISMISSED without prejudice.

The Clerk is directed to forward a copy of this Order to all counsel of record.

Anthony J. Trenga
United States District Judge

April 15, 2021
Alexandria, Virginia

16